Nan J. HAMMETT and Sherry L. Hammett, Appellants,

v.

Ed ZIMMERMAN and Sandra Zimmerman, Appellees.

No. 2–90–093–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 26, 1991.

Dushman & Friedman, P.C., Lowell E. Dushman and Charles Kennedy, Fort Worth, for appellants.

Peebles, Betty & Brantley, and Paul Peebles, Fort Worth, for appellees.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

DAY, Justice.

Nan J. Hammett and Sherry L. Hammett, appellants, brought this action against Ed Zimmerman and Sandra Zimmerman, appellees, for personal injuries sustained when their car was struck from the rear by a car driven by Sandra Zimmerman on July 8, 1986. The jury found that Sandra Zimmerman was negligent and that such negligence proximately caused the collision. The jury also found the collision was the cause of injuries sustained by both the Hammetts and which required medical care in the amounts of $609.00 and $798.00, respectively. The jury gave no award for other damages, including the Hammetts' alleged claim for physical pain and mental anguish. The Hammetts' motions for mistrial and new trial were denied, from which they brought this appeal.

We reverse and remand for a new trial as to *Nan* Hammett and affirm with respect to *Sherry* Hammett.

In their first and fourth points of error, the Hammetts claim the trial court erred in failing to grant a *new trial* because the jury's findings of no past pain and mental anguish in jury questions two and three were so against the great weight and preponderance of the evidence as to be manifestly unjust. The Hammetts assert in points of error two and five that the trial court erred in failing to grant a *mistrial* because they were entitled to a new trial as a matter of law by virtue of the jury's findings of liability and injury and its subsequent finding of no damages for past physical pain and mental anguish. The Hammetts' third and sixth points of error appear to be restatements of points of error one, two, four, and five. In essence, the Hammetts contend the jury could not disregard uncontroverted medical testimony that the Hammetts sustained injuries arising from their automobile accident. In addition, the Hammetts assert that the jury could not disregard its own findings of proximate cause and consequently award the Hammetts no damages for past pain and suffering. For purposes of expediency and judicial efficiency, we will address the Hammetts' points of error en masse.

The jury generally has the prerogative to set damages. However, it has no authority to completely ignore the undisputed facts of the case and arbitrarily fix an amount that is unsupported by the evidence. *Thomas v. Oil & Gas Bldg., Inc.*, 582 S.W.2d 873, 881 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Taylor v. Head*, 414 S.W.2d 542, 544 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.). When there is uncontroverted evidence of an objective injury, a jury finding that the plaintiff suffered no past physical impairment and pain is against the great weight and preponderance of the evidence. *See Cornelison v. Aggregate Haulers, Inc.*, 777 S.W.2d 542, 548 (Tex.App.—Fort Worth 1989, writ denied) (jury findings that automobile passenger injured in collision suffered zero dollars past physical impairment and pain were so against the great weight and preponderance of the uncontroverted evidence as to be manifestly unjust); *Russell v. Hankerson*, 771 S.W.2d 650, 653 (Tex.App.—Corpus Christi 1989, writ denied) (jury's determination that the plaintiff was not entitled to any damages for past

pain, mental anguish, and physical impairment was against the great weight and preponderance of the evidence since the plaintiff offered sufficient evidence which was not refuted by the defendant); *Johnson v. Tom Thumb Stores, Inc.*, 771 S.W.2d 582, 587 (Tex.App.—Dallas 1989, writ denied) (jury finding that injured party experienced no physical impairment and pain in past was made against the great weight and preponderance of the evidence when there was uncontradicted testimony that party experienced pain); *Loyd Elec. Co. v. Millett*, 767 S.W.2d 476, 484 (Tex. App.—San Antonio 1989, no writ) (evidence of worker's past surgical procedures and testimony of worker's wife and son supported award of damages for pain and suffering); *Tri-State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 493 (Tex.App.—Houston [14th Dist.] 1989, no writ) (evidence of victim's continuing pain, lost ability to enjoy recreational sports activities, and loss of future earning capacity was sufficient to support victim's recovery for past physical impairment); *Robinson v. Minick*, 755 S.W.2d 890, 893 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (finding that automobile passenger who sustained fractures did not have any past physical impairment substantial enough to support a separate damages award was against the great weight and preponderance of the evidence); *Porter v. General Tel. Co.*, 736 S.W.2d 204, 205 (Tex.App.—Corpus Christi 1987, no writ) (evidence in personal injury suit that the plaintiff was cut established that she was entitled to some compensation for past physical pain which she suffered). This is especially true when the jury finds a causal connection between the defendant's negligence and the injury sustained by the plaintiff. *See Allright, Inc. v. Pearson*, 711 S.W.2d 686, 693–94 (Tex.App.—Houston [1st Dist.] 1986), *aff'd in part, rev'd in part,* 735 S.W.2d 240 (Tex.1987) (evidence of causal connection between defendant's negligence and pain suffered by defendant sufficiently supported award for past physical pain where defendant's omissions were the proximate cause of the incident); *Blount v. Earhart*, 657 S.W.2d 898, 902 (Tex.App.—

Tyler 1983, no writ) (rule that evidence of plaintiff's objective symptoms of injury cannot be disregarded by the jury if the defendants fail to refute it does not apply where the jury fails to find causation and the evidence shows that the cause of the alleged injury was an occurrence other than the accident in question). In such a case, the jury must award something for *every* element of damage resulting from the injury. *Thomas*, 582 S.W.2d at 881; *Gallegos v. Clegg*, 417 S.W.2d 347, 357 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.).

■ To uphold a jury's finding that an injured party is entitled to nothing for past pain and suffering and mental anguish, the jury would be required to find by a preponderance of the evidence that the injured party's injury was unaccompanied by *any* pain and suffering. *Sansom v. Pizza Hut of East Texas, Inc.*, 617 S.W.2d 288, 293 (Tex.Civ.App.—Tyler 1981, no writ); *Fuller v. Flanagan*, 468 S.W.2d 171, 178 (Tex.Civ. App.—Fort Worth 1971, writ ref'd n.r.e.); *Gallegos*, 417 S.W.2d at 357. In addition, the jury may deny such damages if the injuries sustained are "subjective" in nature. *See Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ) (jury finding of no damages for pain and suffering, contrary to the great weight and preponderance of the evidence, is proper when the indicia of injury and damages are more subjective than objective, that is, the more evidence of outward signs of pain, the less findings of damages depend on the claimant's own feelings and complaints); *McGuffin v. Terrell*, 732 S.W.2d 425, 427 (Tex.App.—Fort Worth 1987, no writ) (plaintiff was properly denied damages for past medical expenses and past pain and suffering where *cumulative* evidence reflected that no objective symptoms were discovered until a substantial time period after her accident, no surgical procedure was performed on the plaintiff, *and* the jury found that the injury sustained did not require all of the examinations and treatments received by the plaintiff); *Landacre v. Armstrong Bldg. Maintenance Co.*, 725

S.W.2d 323, 325 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (jury properly denied damages for past physical impairment where the plaintiff testified she was permitted to return to work without restrictions from her physician, she returned to her other activities, she was able to participate in her former hobbies, and she was able to do everything she could before her accident despite her injury). This principle was succinctly set out in *Dupree v. Blackmon*, 481 S.W.2d 216 (Tex.Civ.App.—Beaumont 1972, no writ):

> If the plaintiff has objective symptoms of injury, ... and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence cannot be disregarded by the jury when the defendant fails to refute it.
>
> On the other hand, if plaintiff's complaints are subjective in nature ... which the defendant may not readily dispute, then the negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of the plaintiff alone.

*Id.* at 221.

Examples of objective evidence of injury supporting an award of damages for pain and suffering include:

1. skull and facial fractures (accompanied by the dripping of spinal fluid from the nose) (*Robinson*, 755 S.W.2d at 893);
2. organic brain syndrome and nerve damage (*Cornelison*, 777 S.W.2d at 545);
3. severe electrical burns (*Loyd Elec. Co.*, 767 S.W.2d at 484);
4. broken hip (*Johnson*, 771 S.W.2d at 587);
5. linear fracture of the foot (*Russell*, 771 S.W.2d at 653);
6. cut (*Porter*, 736 S.W.2d at 205);
7. lacerations, tendinitis, and torn muscles requiring surgery (*Crowe v. Gulf Packing Co.*, 716 S.W.2d 623, 624 (Tex.App.—Corpus Christi 1986, no writ));
8. reverse curvature of the spine, concussion, and lumbar sprains (*Del Carmen Alarcon v. Circe*, 704 S.W.2d 520, 521 (Tex.App.—Corpus Christi 1986, no writ)); and
9. broken ankle requiring full cast (*Fuller*, 468 S.W.2d at 178).

 Our determination as to whether objective evidence of injury exists requires that we look only to the jury's answers to questions one, two, and three and the uncontroverted testimony of Dr. Kenneth Winton, an osteopath who acted as the Hammetts' doctor. Questions one, two, and three, and the answers thereto, follow:

QUESTION NO. 1:
Did the negligence of Sandra Zimmerman proximately cause the occurrence in question?
Answer "Yes" or "No"
Answer: Yes
If you have answered Question No. 1 "Yes", [sic] then answer Question Nos. 2 and 3.

QUESTION NO. 2:
What sum of money, if paid now in cash, would fairly and reasonably compensate Nan J. Hammett for her injuries, if any, that resulted from the occurrence in question?
Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Answer in dollars and cents for damages, if any.

| | | PAST | FUTURE |
|---|---|---|---|
| Element a. | Physical pain and mental anguish; | $ 0 | $ 0 |
| Element b. | Loss of earning capacity; | $ 0 | $ 0 |
| Element c. | Physical impairment; | $ 0 | $ 0 |
| Element d. | Medical care. | $609.00 | $ 0 |

Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

Do not include any amount for any condition not resulting from the occurrence in question.

QUESTION NO. 3:
What sum of money, if paid now in cash, would fairly and reasonably compensate Sherry L. Hammett for her injuries, if any, that resulted from the occurrence in question?
Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Answer in dollars and cents for damages, if any.

| | | PAST | FUTURE |
|---|---|---|---|
| Element a. | Physical pain and mental anguish; | $ 0 | $ 0 |
| Element b. | Loss of earning capacity; | $ 0 | $ 0 |
| Element c. | Physical impairment; | $ 0 | $ 0 |
| Element d. | Medical care. | $798.00 | $ 0 |

Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.
Do not include any amount for any condition not resulting from the occurrence in question.

---

The undisputed medical testimony of Dr. Winton reveals that *Nan* Hammett sustained physical injuries as a result of her automobile collision. Her first appointment with Winton was the day after the accident, during which he observed her injuries and made the following diagnosis:

1. restricted range of neck movement due to left trapezius muscle hypertrophy (left shoulder muscle swelling); and

2. left shoulder neck pain and muscle spasm.

Winton recommended that Nan Hammett take oral non-steroidal anti-inflammatories, analgesics for pain, and physical therapy in the form of deep muscle heat treatments and hot packs. Winton testified that as of July 18, 1986, Nan Hammett stated that she was "feeling okay except [for her] neck"; she made no mention of back pain at this time. Winton suggested that she be hospitalized based on his observation of her intractable neck and accompanying pain and because she was not responding to out-patient non-steroidals and physical therapy. While in the hospital, Nan Hammett received x-rays and a consultation from a neurologist, Dr. Tyler. She underwent manipulation of her cervical, thoracic and lumbosacral under anesthesia. Hammett also received intravenous steroids and oral non-steroidal anti-inflammatories. On September 15, Winton noted that Nan Hammett continued to malinger, that is, she was not improving significantly but was carrying out her physical activities such that the degree of pain that she described or the discomfort she endured was not as significant as she related. Winton discharged her on September 26, 1986. At her last visit to Winton, she stated that she was feeling better.

Winton's subsequent diagnosis of Nan Hammett included the following findings:

1. traumatic occipital trigeminal neuralgia (inflammation of the trigeminal nerve at the back of the head); and

2. chronic sacroiliac (lower portion of the lower back) strain syndrome.

He testified that his prognosis of Nan Hammett's injuries included his belief that injuries of the type sustained by her can be chronic and that the chances for full recovery would be guarded. Winton noted that at the time of the accident, Nan Hammett apparently sustained no pain. However, pain developed and increased over the course of time from the accident until her first visit.

The Zimmermans cite our holding in *McGuffin* for the proposition that a finding of objective injury, namely a muscle spasm, by a physician weeks after that appellant's accident, absent other evidence of the injury, renders testimony as to that finding subject to the discretionary consideration of the jury. In *McGuffin*, as in this case, the evidence at trial consisted mainly of the appellant's testimony and the deposition testimony of her doctor. The appellant in *McGuffin* testified that approximately two hours after the collision and after she returned home, she began to experience some pain in her neck and shoulder. *McGuffin*, 732 S.W.2d at 426. Her doctor was out of the office but she was examined by his associate, who prescribed a muscle relaxant. Three days later she was examined by her doctor who did not prescribe additional medication or treatment at the time. *Id.* After continued visits, appellant's doctor prescribed "pain pills" and, thereafter, referred her to a physical therapist. She testified that neither the medication nor the physical therapy seemed to alleviate her pain. *Id.* There were no findings of objective symptoms until approximately three weeks after the accident, when after several office visits, her doctor noted muscle spasm. *Id.* at 427. All of the reports of other examining physicians indicated no objective symptoms were present. *Id.*

In the case at bar, however, Dr. Winton testified with respect to Nan Hammett's objective injuries after comparing the results of x-rays and a postural survey taken on May 14, 1986 and September 23, 1986, respectively. Winton made the following observations with respect to the changes in Nan Hammett's physiological condition:

1. listing of the lumbar spine to the left (7% scoliosis with a convexity to the left); and

2. declination of the sacral base plane (left iliac crest was decreased).

We conclude that Winton's uncontradicted analysis of the x-rays and postural survey provides us with additional, more compelling evidence of objective injury than that provided to this court in *McGuffin*. There-fore, we find *McGuffin* distinguishable on its facts.

*Sherry* Hammett first visited Dr. Winton on July 9, 1986, during which Winton made the following post-examination diagnosis regarding Hammett's physical condition:

1. restricted range of motion of the cervical spine of the neck;

2. muscle tightness in the left trapezius (left shoulder area); and

3. temporomandibular tenderness on the right jawbone.

Winton also diagnosed Sherry Hammett's injury as acute cervical strain syndrome (neck injury). She took muscle relaxants and analgesics for pain and physical therapy (including heat treatments, hot packs, and osteopathic manipulative therapy). On September 10, 1986, Winton reexamined her and made the following observations:

1. decreased muscle swelling of the cervical spine;

2. decreased tenderness;

3. no restriction with regard to the range of motion; and

4. tightness in the thoracic area (attributed to a source other than the automobile accident).

At Sherry Hammett's last visit one week later, Winton observed decreased muscle tightness and swelling of the lumbar spine.

The uncontroverted findings of Winton, coupled with the jury's finding of proximate cause and liability, present compelling evidence that *Nan* Hammett sustained past pain and physical disfigurement. Because it was established that Nan Hammett suffered an injury, even though the jury may have concluded that her injuries were not serious, the conclusion that a degree of pain, suffering and mental anguish resulted therefrom is inescapable. *Sansom*, 617 S.W.2d at 293. For this reason, we conclude that the jury's finding of no damages for past pain and suffering as to Nan Hammett was so against the great weight and preponderance of the evidence as to be manifestly unjust. Nan Hammett's first, second, and third points of error are sustained. However, as to *Sherry* Hammett, the record reflects that she presented no *objective* evidence of injury. Therefore, we

find that her injuries were "subjective" in nature and that the jury did not err in awarding Sherry Hammett only those damages in the amount of her medical expenses. We conclude that this finding is dispositive of Sherry Hammett's points of error, which are hereby overruled.

We reverse the judgment of the trial court and remand this case for a new trial as to Nan Hammett only. We affirm the judgment as to Sherry Hammett. Pursuant to Rule 139 of the Texas Rules of Civil Procedure, costs of appeal are assessed one-half against the Zimmermans and one-half against Sherry Hammett.